# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ALABAMA SPACE SCIENCE EXHIBIT COMMISSION doing business as U.S. SPACE & ROCKET CENTER, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 5:19-cv-594-LCB |
| v. | ) ) | |
| MERKEL AMERICAN INS. CO., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alabama Space Science Exhibit Commission d/b/a U.S. Space & Rocket Center ("ASSEC" or "plaintiff") has filed a Motion to Remand (doc. 5) on the basis that the Court lacks subject matter jurisdiction because there is no diversity of citizenship between the parties. Defendant Merkel American Insurance Company ("Merkel") filed a response (doc. 7), and ASSEC filed a reply (doc. 8). Therefore, the Motion to Remand is ready for review. For the reasons stated herein, the Motion to Remand is denied.

## I.    BACKGROUND

This insurance coverage dispute was initially filed by ASSEC in the Circuit Court of Madison County. (Doc. 1-1, pp. 3-11). Merkel removed the action to this Court on April 18, 2019. (Doc. 1). ASSEC subsequently filed the Motion to

Remand.  ASSEC argues that the Court lacks subject matter jurisdiction because it is an arm of the State of Alabama – not a citizen of the State of Alabama – and therefore there is no diversity jurisdiction.  In particular, ASSEC, applying a four-factor test, argues that it is an arm of the state.  ASSEC does not contest the amount in controversy.

In response, Merkel notes, among other things, that ASSEC has raised and lost the same argument (*i.e.*, that it is an arm of the state) multiple times in another case in the Northern District of Alabama, *Alabama Space Science Exhibit Commission v. Odysseia Co., Ltd.*, 5:14-cv-413-MHH.  Applying the same four factors as ASSEC, Merkel argues that ASSEC is not an arm of the state.

In its reply, ASSEC argues at least two things have changed since the motions to remand in *Odysseia* were decided.  First, ASSEC states that the Alabama Supreme Court's opinion in *Barnhart v. Ingalls*, No. 1170253, 2018 WL 6074918 (Ala. Nov. 21, 2018), sheds light on the issue.  Second, ASSEC states that the prior opinions in *Odysseia* were based on a limited factual record and that it has filed a motion for summary judgment in *Odysseia* with respect to the diversity jurisdiction issue that includes the factual record present in this action.

The Court will address these arguments, as well as other arguments made by the parties, to the extent necessary, in the next section.

## II.    DISCUSSION

Section 1332(a) states that district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and is between "citizens of different States."  *Id*. at § 1332(a)(1).  The burden of establishing subject matter jurisdiction falls on the party invoking removal.  *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411-12 (11th Cir. 1999).  Furthermore, federalism dictates that "all doubts about jurisdiction should be resolved in favor of remand to state court."  *Id*. at 411.

"[I]t is well established that a state is not a citizen of a state for the purpose of diversity jurisdiction under 28 U.S.C. § 1332."  *Id*. at 412.  "A public entity or political subdivision of a state, unless simply an 'arm or alter ego of the State,' however, is a citizen of the state for diversity purposes."  *Id*. (quoting, in part, *Moor v. Alameda County*, 411 U.S. 693, 71-18 (1973)).  Therefore, if a party is deemed to be an arm or alter ego of the State, diversity jurisdiction does not exist. *Id*.  As noted, plaintiff contends that it is not a citizen for purposes of Section 1332 because it is an arm of the State of Alabama.

"Although the question of diversity jurisdiction is distinct from that of immunity, *see Parks v. Carriere Consol. Sch. Dist.,* 12 F.2d 37, 38 (5th Cir. 1926), we have also held that the Eleventh Amendment immunity analysis is applicable to determinations of citizenship for the purpose of diversity jurisdiction."  *Id*. at 412.

To determine whether a party is an arm of the state in the Eleventh Circuit, a court must consider four factors: "(1) how the state law defines the entity; (2) the degree of state control over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Nichols v. Alabama State Bar*, 815 F.3d 726, 732 (11th Cir. 2016). Indeed, the parties agree on the four factors to be applied. (Doc. 5, p. 8; Doc. 7, p. 8).

Whether an agency is an arm of the state is a federal question; however, "whether that standard is met will be determined by carefully reviewing how the agency is defined by state law." *Versiglio v. Bd. of Dental Examiners of Alabama*, 686 F.3d 1290, 1291 (11th Cir. 2012); *see also Manders*, 338 F.3d 1304, 1309 (11th Cir. 2003) ("The issue of whether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law. But the federal question can be answered only after considering provisions of state law."). Furthermore, "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders*, 338 F.3d at 1308. Thus, although ASSEC is not the defendant in this action, the Court considers its analysis in the context of the lawsuit before it, *i.e.*, a lawsuit by ASSEC against its insurance company, Merkel, with respect to Merkel's alleged duty to defend and indemnify it for a dispute related to payment for production of an animated

television series by non-party Space Race, LLC.[1]

## A.     How Alabama law defines ASSEC

The Court has found no Alabama law expressly declaring ASSEC an arm of the state. Other courts in this district, however, have determined that ASSEC is not an arm of the state. *See, e.g.*, *Alabama Space Science Exhibit Comm'n v. Odysseia Co., Ltd.*, 5:14-cv-413-MHH, Mem. Op. and Order, Doc. 52 (N.D. Ala. Aug. 10, 2016) (finding that ASSEC is not an arm of the state and is therefore a citizen of Alabama for purposes of diversity jurisdiction, Order, Doc. 72 (N.D. Ala. April 26, 2017) (declining to disturb its prior decision that ASSEC is a citizen of Alabama for purposes of diversity jurisdiction); *see also Parker v. Alabama Space Science Exhibit Comm'n*, 5:15-cv-2261-AKK, Mem. Op. and Order, Doc. 12 (N.D. Ala. June 6, 2016) (finding that the U.S. Space & Rocket Center operated by ASSEC is not an arm of the state for Eleventh Amendment sovereign immunity purposes). *But cf. Ingalls v. U.S. Space & Rocket Ctr.*, No. 2:14-CV-699-WKW, 2015 WL 4528687, at *6 (M.D. Ala. July 27, 2015) ("Based upon an examination of the Commission's founding legislation and Alabama case law, the court finds that Alabama courts would determine that the Commission functions as an arm of the

---

[1] The Court notes that the underlying dispute between ASSEC and Space Race, LLC, is or has been subject to litigation in at least two different forums, an American Arbitration Association proceeding in New York, which was confirmed in a New York state court, as well as a recently filed action in this district. *See Space Race, LLC v. Alabama Space Science Exhibit Comm'n d/b/a U.S. Space & Rocket Center, Civil Action No. 655649/2018 (N.Y. Sup. Ct.)* and *Alabama Space Science Exhibit Comm'n v. Space Rac*e, LLC, 5:19-cv-315-AKK (N.D. Ala.).

state and is, therefore, entitled to Eleventh Amendment immunity."). While the Court realizes that it is not bound by the decisions of other judges in this district, it does find them persuasive. Likely anticipating this possibility, plaintiff, while making many of the same arguments that it did in the other cases, primarily argues that a recent Alabama Supreme Court case, *Barnhart v. Ingalls*, __ So. 3d__, 2018 WL 6074918 (Ala. Nov. 21, 2018), demonstrates that Alabama law conclusively establishes that ASSEC is an arm of the State of Alabama and, as a result, this Court should do the same. The Court will therefore examine *Barnhart*.

In *Barnhart*, the Alabama Supreme Court considered what it construed as an appeal by three ASSEC officers in their official and individual capacities. The basis of *Barnhart* was an audit of ASSEC conducted by the Department of Examiners of Public Accounts ("DEPA") in which DEPA discovered that ASSEC had not complied with Alabama law in (1) its payment of annual longevity bonuses to ASSEC employees; and (2) in the manner it compensated ASSEC employees for working on certain state holidays. *Id*. at *1 (citing Ala. Code § 36-6-11(a) and § 1-3-8). Representatives of ASSEC maintained, among other things, that the legislation pursuant to which it was created removed it from the purview of certain state employment laws, including the benefits statutes. Plaintiffs, former employees of ASSEC, filed suit against ASSEC and several ASSEC officers, alleging that they had not received all compensation to which they were entitled by

statute during their tenures as ASSEC employees. In particular, plaintiffs alleged that they had not been paid the amount of longevity bonuses to which they were entitled when they were ASSEC employees and that they had not been properly compensated for working on state holidays that were not observed at ASSEC.

Plaintiff requested the following: (1) judgment declaring that ASSEC's existing policies and compensation plan did not comply with the terms of the Alabama benefits statutes ("the declaratory-relief claim"); (2) an injunction requiring ASSEC officers to comply with those statutes ("the prospective-relief claim"); (3) an award of money previously earned, but not paid, because of the failure to comply with the statutes ("the retrospective-relief claim"); and (4) various negligence/wantonness and breach-of-fiduciary duty claims against the ASSEC officers in their individual capacities ("the individual-capacity claims"). The circuit court certified for class-action treatment the declaratory-relief claim, the retrospective-relief claim, and the individual-capacity claims; the circuit court dismissed the claim against ASSEC on state immunity grounds. The ASSEC officers petitioned the Alabama Supreme Court for a writ of mandamus directing the circuit court to vacate its order certifying the class and dismissing the claims against them. For reasons not pertinent here, the Alabama Supreme Court treated the petition for writ of mandamus as an appeal.

The Alabama Supreme Court then considered whether claims against the

three ASSEC officers should be dismissed, or, in the alternative, whether to vacate the circuit court's order certifying those claims for class-action treatment. The Alabama Supreme Court first considered the issue of whether the claims against the ASSEC officers were barred by state immunity. The Alabama Supreme Court concluded that plaintiffs' retrospective-relief claim for money owed was not barred by state-agent immunity because, "if the benefit statutes obligated [ASSEC] officers to pay the named plaintiffs compensation they were not paid, the [ASSEC] officers had no discretion to avoid that requirement; obedience to the statute is mandatory." *Id*. at *8. The Alabama Supreme Court concluded, "In sum, if it is ultimately determined that the named plaintiffs should have received additional compensation pursuant to the benefit statutes, the [ASSEC] officers had a legal duty to make those payments all along, and in finally doing so they are merely performing a ministerial act. Accordingly, the named plaintiffs' retrospective-relief claim is not barred by § 14." *Id*. Thus, while the Alabama Supreme Court ultimately found that the ASSEC officers in their official capacities were not entitled to state immunity, it nonetheless went through the state immunity analysis.

The Alabama Supreme Court then considered whether the ASSEC officers were entitled to state agent immunity with regard to the individual-capacity claims against them. The Alabama Supreme Court concluded that the individual-capacity claims were barred. The Alabama Supreme Court reasoned

It is clear, however, from the named plaintiffs' statement of those claims that the duties allegedly breached by the [ASSEC] officers were owed to the putative class members <u>only</u> because of the positions the [ASSEC] officers held and that the [ASSEC] officers were, accordingly, acting <u>only</u> in their official capacities when they allegedly breached those duties by failing to give effect to the benefit statutes. Stated another way, the [ASSEC] officers had no duties <u>in their individual capacities</u> to give effect to the benefit statutes; rather, any duties they had in that regard existed solely because of their official positions in which they acted for the State.

*Id*. at *9. In short, and as pointed out by ASSEC, the Alabama Supreme Court recognized that state immunity was available to ASSEC employees, even though it concluded that the retrospective-relief claim was not barred by it. The Alabama Supreme Court then ultimately decided that the circuit court did not exceed its discretion in certifying plaintiffs' retrospective-relief and declaratory-relief claims for class-action treatment, but reversed the circuit court's decision to certify the individual-capacity claims for class treatment.

ASSEC thus asserts that, in *Barnhart*, "Alabama's highest court has determined that ASSEC is an arm of the State by granting State immunity to its officers and employees." (Doc. 8, p. 3). In support of its argument, ASSEC states that the doctrine of state immunity is based on a provision in Article I, Section 14 of the Alabama Constitution which provides that the State of Alabama shall never be made a defendant in any court of law or equity, and that Section 14 therefore

provides state employees immunity from suit.  ASSEC asserts that the Alabama Supreme Court made clear in *Barnhart* that ASSEC is an arm of the state by holding that its officer and employees are entitled to state immunity.  ASSEC points to *Versiglio v. Bd. of Dental Examiners of Ala.*, 686 F.3d 1290 (11th Cir. 2012), in support of its position, although the Court notes that ASSEC's analysis with respect to this case is contained mostly in a footnote.

In *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 686 F.3d 1290 (11th Cir. 2012) ("*Versiglio II*"), the Eleventh Circuit considered, on a petition for rehearing, its decision in *Versiglio v. Bd. of Dental Exam'rs of Ala.*, 651 F.3d 1272 (11th Cir. 2011) ("*Versiglio I*").  In *Versiglio II,* the Eleventh Circuit determined that the Board of Dental Examiners of Alabama ("the Board") is an arm of the state and protected from suit by sovereign immunity through the Eleventh Amendment to the United States Constitution.  At time of oral argument in *Versiglio I*, the highest court in Alabama to consider the issue of whether the Board was an arm of the state was the Alabama Court of Civil Appeals, which concluded that the Board was *not* an arm of the state and not entitled to state immunity.  However, the Eleventh Circuit became aware of the Alabama Supreme Court's decision to grant the Board's petition for writ of certiorari with respect to the decision of the Alabama Court of Civil Appeals.  The Eleventh Circuit therefore withheld issuance of its mandate "that could have resulted in the incongruous result of having a 'state

agency' that is immune from suit under state law but not federal law." *Versiglio II*, 686 F.3d at 1292. The Alabama Supreme Court ultimately reversed the Court of Civil Appeals and concluded that the Board *is* an arm of the state and entitled to immunity from suits in Alabama state courts. Based on the Alabama Supreme Court's decision, the Eleventh Circuit, in *Versiglio II*, vacated its prior decision in *Versiglio I*, and found that the Board was an arm of the state and entitled to sovereign immunity. In doing so, the Eleventh Circuit stated, "Finding now that the Board is not entitled to sovereign immunity would require this court to interpret Alabama law in a way that is diametrically opposed to the findings of the highest state court to consider the issue. We decline to do so." *Id*. at 1293.

Later, in *Walker v. Jefferson County Board of Education*, 771 F.3d 748 (11th Cir. 2014), the Eleventh Circuit discussed its decision in *Versiglio II*.[2] In *Walker*, the Eleventh Circuit considered whether to recede from its prior decision that school boards in Alabama are *not* arms of the state and therefore not entitled to sovereign immunity under the Eleventh Amendment. The Eleventh Circuit in *Walker* ultimately did not back away from its prior decision. The Eleventh Circuit did so in spite of the fact that the Alabama Supreme Court had found, in 2009 and 2012 decisions, that county school boards *were* entitled to state immunity under Section 14 of the Alabama Constitution. *Id*. at 753-54 (citing *Ex parte*

---

[2] The Court discusses only those parts of *Walker* that are relevant to its analysis of *Versiglio II*.

*Montgomery Cnty. Bd. of Educ.*, 88 So. 3d 837, 841 (Ala. 2012) and *Ex parte Hale Cnty. Bd. of Educ.*, 14 So. 3d 844, 848 (Ala. 2009)). In doing so, the Eleventh Circuit stated, "We have no quarrel with the general proposition, as expressed in *Versiglio II*, that how state law defines an entity is significant for purposes of the Eleventh Amendment." *Walker*, 771 F.3d at 753. However, the Eleventh Circuit recognized that how state courts treat an entity is only one part of the analysis. More importantly to this action, however, the Eleventh Circuit *rejected* the county school boards' suggestion that its decision in "*Versiglio II* can be read as collapsing the entire Eleventh Amendment multi-factor test into a single dispositive inquiry – whether the state courts grant state law immunity to the entity for suits based on state law . . . ." *Id.* at 754. In other words, the Eleventh Circuit did not find the fact that Alabama courts had determined that an entity had state immunity to be entirely dispositive of whether that same entity was entitled to sovereign immunity under the Eleventh Amendment. The Eleventh Circuit also noted "that the Alabama courts do not view state sovereign immunity and Eleventh Amendment immunity as one and the same." *Id.* at 755.

In sum, the Court agrees with ASSEC that the Alabama Supreme Court in *Barnhart* applied state immunity principles to the ASSEC officers and that fact is not to be ignored. As the Eleventh Circuit recognized in *Walker*, however, this does not automatically equate to a finding that ASSEC is an arm, or alter ego, of

the state for purposes of immunity under the Eleventh Amendment (and, therefore, in this action, for purposes of determining diversity jurisdiction). Thus, while these two concepts are not wholly unrelated, the Court does not find *Barnhart* dispositive with respect to the present analysis.

ASSEC also points out that the claims in *Barnhart* arose after an audit of the ASSEC's revenues and expenditures by the DEPA. But, as discussed below, the fact that ASSEC's financial records are subject to audit by DEPA does not necessarily make it an arm of the state. Furthermore, ASSEC fails to mention an argument that was made by ASSEC in *Barnhart*, namely that the legislation pursuant to which it was created removed it from the purview of certain state employment laws, including the benefits statutes; in other words, ASSEC itself has argued that it is subject to different treatment. Consequently, while the Court does not ignore the holding in *Barnhart*, it is not dispositive of the issue at hand either. The Court will therefore proceed with its analysis.

ASSEC also argues that Alabama law treats it as an arm of the state because its enabling legislation expressly defines it as a state agency, and the legislation is codified in Title 41 of the Alabama Code entitled, "State Government." *See Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983) (state entity's placement and description in state code suggests that it should be considered an arm of the state). *But cf. Deal v. Tannehill Furnace & Foundry*

*Comm'n*, 443 So. 2d 1213, 1216 (Ala. 1983) (noting that resolution of whether a state commission described as a "body corporate" and "state agency" was entitled to state immunity "cannot turn on the use of labels"). Both of these assertions are correct. In Title 41 of the Alabama Code labeled, "State Government," ASSEC was established as "state agency" that "shall be a public body corporate." Ala. Code § 41-9-430. Members of ASSEC are appointed by the governor. *Id*. at § 41-9-431. The Court agrees that these facts generally tend to show that Alabama law treats the ASSEC as an arm of the state.

That being said, when the Alabama Supreme Court considered whether a county board of education was an arm of the state for Eleventh Amendment immunity purposes, it found that the board of education's significant authority with regard to the employment and conduct of its teachers lended little weight to its being considered an arm of the state for Eleventh Amendment immunity purposes. *Ex parte Madison County Bd. of Educ.*, 1. So. 3d 980, 987-88 (Ala. 2008). The Alabama Supreme Court also noted that the county board of education determined its own educational policy and was vested with the general administration and supervision of the schools in its county. *Id*.

Similarly, ASSEC is vested with power to employ an executive director and additional personnel with compensation *being paid by funds of the ASSEC.* Ala. Code § 41-9-432(13). Furthermore, ASSEC "shall designate the duties and

authority of the executive director and such additional personnel" and is empowered to make such rules and regulations as ASSEC may deem necessary to provide for the operation, management, and control of the facility. *Id.* at (13)-(14). Thus, although members of ASSEC are appointed by the Governor, the executive director and numerous employees are hired and managed by ASSEC itself.

The Alabama code further states that the executive director and additional personnel "shall not" be subject to the state Merit System Act; however, they are eligible for participation in the state health insurance plan and the state employees' retirement system under the provisions of the Alabama Code governing "counties, cities, towns and other quasi-public organizations of the state" – political subdivisions not subject to sovereign immunity. *Id.* at (13); *Robinson v. Georgia Dept. of Transp.*, 966 F.2d 637, 638 (11th Cir. 1992) ("The immunity provided by the Eleventh Amendment applies to states and state officials but not to municipal corporations, counties, or other political subdivisions of the state."). ASSEC asserts that its employees are required to participate in the state employees' retirement system. (Doc. 5-1, p. 2 (Ramirez Aff., ¶ 3); Doc. 5-1, p. 6 (Attachment A to Ramirez Aff.)). However, the correspondence from the state employees' retirement system to ASSEC expressly states that "your agency has the sole responsibility of adequately funding the benefits of your retirees. The retirement system administers the pension program for local agencies, but is not liable for the

payment of any pensions or benefits of their employees or retirees in the event that the agency's reserves are exhausted." (Doc. 5-1, p. 6 (Attachment A to Ramirez Aff.))

Furthermore, the Alabama Code gives the ASSEC "all the powers and privileges of a corporation for purpose of providing for and participating in the management and control of facilities to house and display such visual exhibits of space exploration and hardware used therefor as may be made available by the National Aeronautics and Space Administration ["NASA"]" – a federal agency. Ala. Code § 41-9-430. This includes broad power to enter into contracts, acquire and convey property, and borrow money, among other things – some of which the Court will discuss later – to accomplish its stated mission. Ala. Code § 41-9-430. Moreover, Alabama courts have found that a public corporation is an entity separate and distinct from the state. *Stallings & Sons, Inc. v. Alabama Bldg. Renovation Fin. Auth.*, 689 So. 2d 790, 792 (Ala. 1996) (" "It has been repeatedly held that a public corporation is an entity separate and distinct from the State, and that debts of such corporation are not debts of the State, within the purview of Section 213.") (internal quotation marks and citation omitted). Important to the underlying insurance coverage dispute, the Alabama Code permits ASSEC to develop and institute a program of promotion and advertising of its exhibits and facilities "to be conducted by [ASSEC] both within and without the state in such

manner and to such extent as may be deemed economically advisable and appropriate by the commission." Ala. Code § 41-9-436.

In sum, while the Court considers the Alabama Supreme Court's decision in *Barnhart* as well as Alabama law's description of the ASSEC as a state agency, the Court finds that Alabama law also gives it broad power and autonomy to manage itself and its personnel. *See Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1307 (11th Cir. 2005) (finding that Florida law gives sheriffs great independence in their day-to-day operations such as purchase of supplies and equipment, selection of personnel, and hiring, firing, and setting of salaries and thus the state retained no control over sheriffs in this way). Therefore, the Court concludes that, on balance, this factor indicates that ASSEC is not an arm of the state.

**B.      The degree of state control over the entity**

ASSEC admits that it retains broad corporate powers, but argues that this is not dispositive. While the Court agrees that this is not dispositive, it finds that it weighs against finding that ASSEC is an arm of the state. Alabama law does indeed grant ASSEC broad powers and autonomy. As the Court has noted, ASSEC makes its own hiring and employment decisions. Ala. Code § 41-9-432(13). ASSEC has significant fiscal and managerial authority. ASSEC can raise, borrow, and allocate funds with little or no state approval or oversight. Ala.

Code § 41-9-432(4) (power to borrow money from private sources or other such sources); Ala. Code § 41-9-432(8) (power to make contracts in the issuance of its bonds); Ala. Code § 41-9-432(11) (power to allocate and expend funds from all donations, income, and revenue from any source coming into its treasury for fulfillment of its duties); Ala. Code § 41-9-432(15) (power to expend funds with respect to United States Space Camp); Ala. Code 41-9-436 (1)-(3) (power to develop a program of promotion and advertising of the exhibits and facilities, purchase and acquire items of tangible personal property, and enter into lease agreements for concession operations).

ASSEC is empowered to issue and sell revenue bonds. Ala. Code § 41-9-432(6). Furthermore, "[a]ll revenue bonds issued by [ASSEC] shall be solely and exclusively the obligations of the commission and shall not create an obligation or debt of the state or of any county . . . within the state." *Id*. The Court recognizes that the governor must approve the issuance of interest-bearing obligation bonds and that such "bonds shall be general obligations of the State of Alabama." Ala. Code § 41-9-432(5). *But cf*. Ala. Code § 41-9-434 ("Any general obligation bonds shall also be payable from and secure by a pledge of the revenues and income o*f the commission . . . .*") (emphasis added). However, it appears to the Court that this is the only express manner in which Alabama law obligates the State of Alabama and does not cancel out the broad powers given to ASSEC under

Alabama law with respect to its finances.  *See* Ala. Code § 41-9-432(16) (power to "perform such other acts necessary or incidental to the accomplishment of the purposes of this article, whether or not specifically authorized in this section, and not otherwise prohibited by law").

Important to the issue at hand, ASSEC can contract in its own name.  Ala. Code § 41-9-432(3).  Indeed, the insurance policy obtained by ASSEC and that is attached to the complaint and serves as the basis of this lawsuit shows ASSEC as the insured.  Additionally, ASSEC can acquire, sell, convey, transfer, mortgage, lease or donate property in its own name.  Ala. Code § 41-9-432(12).

ASSEC argues that the Historic Ironworks Commission, formerly known as the Tannehill Furnace and Foundry Commission ("Historic Ironworks Commission") [3], has general corporate powers similar to it and has been found by the Alabama Supreme Court to be an arm of the state.  *See, e.g.*, *Deal v. Tannehill Furnace and Foundry Comm'n*, 443 So. 2d 1213, 1216 (Ala. 1983) ("Considering the legislative language of the various sections together, we have concluded, likewise, that the Tannehill commission was created as an arm of the State of Alabama, existing to carry forth an important function of our State government: holding, maintaining, and preserving state lands of historical significance for the benefit of our citizens.").  ASSEC notes that, similar to it, the members of the

---

[3] Pursuant to Section 41-9-332 of the Alabama Code, the Tannehill Furnace and Foundry Commission was renamed the Historic Ironworks Commission.

Historic Ironworks Commission are appointed by the Governor; the Historic Ironworks Commission is designated as a state agency; is authorized to lease or acquire any real or personal property to fulfill the purpose for which it was established; is authorized to borrow money and issue revenue bonds; may enter into agreements with any civic organization, lay group or industrial, professional, or governmental organization relative to the general management of the park or historic site; and has a tax-exempt status. *See* Ala. Code § 41-9-321 (appointment of members of Historic Ironworks Commission), § 41-9-324 (Historic Ironworks Commission deemed a body corporate), § 41-9-325 (Historic Ironworks Commission deemed a state agency), § 41-9-326 (Historic Ironworks Commission can acquire property, borrow money, and issue revenue bonds), § 41-9-327 (Historic Ironworks Commission can enter into agreements with civic organizations, etc.), § 41-9-329 (Historic Ironworks Commission exempt from state taxation).

However, there are also significant differences between the Historic Ironworks Commission and ASSEC. For one, full-time Historic Ironworks employees are expressly "treated as state employees for the purpose of participating in any insurance programs provided for state employees." Ala. Code § 41-9-330. As noted above, ASSEC employees are treated differently. Ala. Code. 4-9-432(13) (ASSEC employees not subject to state Merit System Act, but

are eligible for participation in the state health insurance and retirement plan under the provisions governing counties, cities, towns, and other quasi-public organizations).

Furthermore, ASSEC is granted much broader authority to conduct its own finances and enter into contracts. *Compare* Ala. Code § 41-9-432(3) (permitting ASSEC to enter into contracts as it may deem necessary or convenient for carry out its purpose, including leases to private industry) *with* Ala. Code § 41-9-327(b) (permitting Historic Ironworks Commission to enter into agreements with any civic organization, lay group, or industrial professional or governmental organization "relative to the general management of the park or historic site"); *see also* Ala. Code § 41-9-432(11) (permitting ASSEC to allocate and expend funds "from any source whatsoever coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities . . . .").

ASSEC is also permitted to convey property and to construct lodging and other similar facilities. While the Historic Ironworks Commission was created to operate and maintain "as a *state* park or historic site" the land and buildings known as the Tannehill Furnace and Foundry, ASSEC was created as a "public body corporate with all the powers and privileges of a corporation" to house and display exhibits as may be made available by NASA – a federal agency. Ala. Code § 41-9-320 (stating purpose of Historic Ironworks Commission) (emphasis added); Ala.

Code § 41-9-430 (stating purpose of ASSEC); *Deal*, 443 So. 2d at 1216 (noting that the Historic Ironworks Commission "was created as an arm of the State of Alabama, existing to carry forth an important function of our *State government* . . . .") (emphasis added). Thus, while the Court agrees that there are some similarities between the two commissions, it finds that treatment of the Historic Ironworks Commission by the Alabama Code and the Alabama Supreme Court does not aid in its analysis with respect to ASSEC.

Additionally, ASSEC asserts that the fact that its counsel in this action has been appointed as a deputy attorney general by the Alabama Attorney General for purposes of bringing this lawsuit supports the conclusion that it is an arm of the state. But upon inspection of the correspondence appointing counsel to represent ASSEC, the Court notes that "total fees and compensation paid to [counsel] for [his] services and expenses will be agreed upon by you and [ASSEC]." (Doc. 5-3 (Ex. 3 Correspondence from Alabama Attorney General)). In other words, the fees and compensation is determined by ASSEC. Furthermore, the correspondence notes that any commitments by the State of Alabama contained in the correspondence shall not constitute a debt of the State of Alabama. *Id*. Thus, the Court finds this fact does not weigh one way or the other.

ASSEC further argues that it is subject to significant state oversight. For example, all non-consumable personal property on ASSEC's premises is tagged,

tracked, and inventoried as state property and subject to audit; ASSEC complies with Alabama's public procurement law[4]; and the Governor must approve all out-of-state business travel for ASSEC employees. Nonetheless, the Court finds that ASSEC hires its own personnel; raises and spends its own money with limited state oversight; contracts in its own name; and can own, acquire, and convey property. *Cf. Deal*, 443 So. 2d at 1216 ("[T]here is evidence in the record that the Tannehill commission is funded by the Alabama legislature."). Thus, on balance, the Court finds that the second factor weighs against ASSEC being an arm of the state.

### C.     Where ASSEC derives its funds

ASSEC argues that its "finances are entrenched in the State of Alabama's budgeting process from start to finish." (Doc. 5, p. 15). In particular, ASSEC notes that it submits its budget goals to the Department of Finance and updates the Department of Finance quarterly on its financial status. ASSEC further notes that the Department of Finance considers ASSEC's requests when helping the Governor prepare the annual executive budget and that its revenues are listed as "state funds" in the annual budget. (Doc. 5, p. 15). ASSEC's financial books and records are also subject to audit by the DEPA. ASSEC further notes that it

---

[4] Relying on the affidavit (doc. 5-1) of ASSEC's chief financial officer, Louie Ramirez, ASSEC asserts that it is required to comply with Alabama's public procurement law. Ramirez's affidavit is not worded so strongly, however. Rather, Ramirez states that ASSEC complies with Alabama's public procurement law, not that it is *required* to do so. (Doc. 5-1, p. 3 (Ramirez Aff., ¶ 8) ("ASSEC complies with Alabama's public procurement law for any contract valued at $15,000 or more and for all contracts for professional services.")).

receives an annual direct appropriation out of the Education Trust Fund, which was 1 million dollars in fiscal year 2017; ASSEC's total receipts, regardless of source, are included within the Education Trust Fund.

The question, however, is where ASSEC derives its funds. Documents submitted by ASSEC show that it obtains most of its funds via admissions and sales, which in 2016 was approximately 30 million dollars. (Doc. 5-8 (Ex. 8 FY18 Agency Budget Request) (showing that, in 2016, majority of funds were from "Admissions/Sales/Miscellaneous")). Furthermore, the Alabama Code contemplates that ASSEC will raise and borrow money and accept gifts, grants, and donations, in addition to allocating and expending funds "from any source whatsoever coming *into its treasury* . . . ." Ala. Code § 432(9), (11) (emphasis added).

ASSEC relies on *Nichols v. Alabama State Bar*, 815 F.3d 726 (11th Cir. 2016), in support of its argument that it is an arm of the state with respect to this factor. In *Nichols*, the Eleventh Circuit found that the Alabama State Bar was an arm of the state and entitled to immunity under the Eleventh Amendment. *Id*. at 732-33. In doing so, the Eleventh Circuit noted that the Alabama State Bar's collected fees were deposited into the state treasury and could only be spent as appropriated by the Alabama legislature; that the Department of Finance supervised the Alabama State Bar's finances; and that judgments against the

Alabama State Bar would be paid out of the state treasury. *Id.* However, the fees collected by the Alabama State Bar are from members of the state bar whose conduct it is tasked with regulating – powers that are public in nature and would otherwise be executed by the Alabama Supreme Court. Furthermore, the fees received by the Alabama State Bar can be spent only as appropriated by the Alabama legislature. On the other hand, ASSEC is given power to "allocate and expend funds . . . coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities . . . ." Ala. Code. § 41-9-432(11). Thus, the Court does not find *Nichols* helpful.

Nor does the Court find another case relied on by ASSEC helpful either. In *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518 (11th Cir. 1983), the Eleventh Circuit found the Jekyll Island-State Park Authority ("Park Authority") to be an arm of the state despite the fact that it could raise money through the issuance of bonds and the operation of Jekyll Island State Park, as well as through operation of a golf course, hotels, restaurants, and other park facilities. However, the Eleventh Circuit noted in its analysis that all leases granted by the Park Authority were deemed to be contracts between the individual lessee, the Park Authority, *and the State of Georgia.* *Id.* at 1521. Furthermore, the Eleventh Circuit noted that Georgia's State Assembly must approve the sale of specified lands on Jekyll Island. *Id.* ASSEC is not so constrained in its finances. *Cf. id.*

("[T]he statute creating the Authority specifically provides that all income resulting from these activities must be used 'for the sole purpose of beautifying, improving, developing, enlarging, maintaining, administering, managing, and promoting Jekyll Island State Park at the lowest rates reasonable and possible for the benefit of the people of the State of Georgia.'"). In short, the Court finds that ASSEC is different from the Alabama State Bar or the Park Authority, and thus those cases do not provide support for ASSEC's position. Thus, the Court finds that, considering that ASSEC derives most of its funds from admissions and sales, this factor indicates that ASSEC is not an arm of the state.

### D. Who is responsible for judgments against ASSEC

ASSEC asserts that because its finances and property are intertwined with the state budget, any money judgement against it would adversely affect the state treasury. ASSEC's assertion is based on the fact that its entire budget is appropriated through the Education Trust Fund and thus, it argues, a judgment against ASSEC would encumber state funds. While the Court agrees that a money judgment paid by ASSEC would be *reflected in and affect* its expenditures, it does not follow that *the State of Alabama* would be liable for any money judgment arising out of this lawsuit. *See Abusaid*, 405 F.3d at 1312 (finding that the Eleventh Amendment's historical concern is whether judgments must be paid out of a state's treasury, not necessarily the indirect impact a judgment would have).

And, in fact, as Merkel notes, Merkel is not seeking a money judgment against ASSEC.[5]  Additionally, the Alabama Code indicates that ASSEC has its own treasury and may "allocate and expend funds from all donations, income and revenue from any source whatsoever coming into its treasury for the fulfillment and accomplishment of its duties and responsibilities . . . . "  Ala. Code § 41-9-432(11).  Furthermore, as noted above, ASSEC is primarily funded through its own revenue.    Therefore, the Court finds this factor weighs against finding ASSEC an arm of the state.

In sum, the Court finds that, in the absence of binding case law and considering the four factors, ASSEC is not an arm of the state for purposes of diversity jurisdiction in this action.  *See, e.g.*, *WM Mobile Bay Envtl. Ctr., Inc. v. The City of Mobile Solid Waste Auth.*, 672 F. App'x 931, 934 (11th Cir. 2016) (finding the City of Mobile Solid Waste Authority was not an arm of the state due to its broad powers and lack of control by the State of Alabama, including the fact that it was an independent public corporation, can sue and be sued in its own name, can acquire and hold title to property, and enter into contracts, agreements, and leases); *see also* Ala. Code § 41-9-436(1) (granting ASSEC certain power due to its "unique character and complexity of the duties and responsibilities" imposed on

---

[5] While this is true, the Court notes that, should Merkel be found under no duty to defend and indemnify, ASSEC may, as an indirect result, be responsible for the judgment arising out of the underlying dispute.

it).

## III.    CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Remand (doc. 5) is DENIED.

IT IS FURTHER ORDERED that the parties conduct a Rule 26 conference and file a planning report by **September 5, 2019**.


**DONE** and **ORDERED** August 15, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE