FILED
2021 Aug-30  AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ALABAMA SPACE SCIENCE** | ) | |
| **EXHIBIT COMMISSION d/b/a** | ) | |
| **U.S. SPACE & ROCKET CENTER** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:5:19-cv-594-LCB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARKEL AMERICAN** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This is an insurance coverage dispute. What began as a fight over the funding of a children's television show has spawned over one hundred pages of briefing on an insurer's duties to defend and indemnify. Alabama Space Science Exhibit Commission ("ASSEC") alleges that Markel American Insurance Company ("Markel") failed to provide it a defense in arbitration as required by its insurance policy. ASSEC also alleges that Markel has failed to indemnify it for the award stemming from that proceeding and that Markel's denials to amounted to bad faith.

Before the Court are ASSEC's Motion for Partial Summary Judgment and Brief in Support (Docs. 33 & 35), Markel's Motion for Summary Judgment and Brief in Support (Docs. 36 & 37), the Parties' respective Oppositions (Docs. 43 & 44), and Replies (Docs. 45 & 46). After thorough review, and with the benefit of

oral argument, Markel's Motion for Summary Judgment is **GRANTED**, ASSEC's Motion for Summary Judgment is **DENIED**, and this matter is **DISMISSED WITH PREJUDICE**.

## FINDINGS OF FACT

### I.    ASSEC's insurance policy with Markel

ASSEC is a non-profit commission and state agency, created by Ala. Code. § 41-9-430. (Doc. 34 at 4; Doc 35 at 6). ASSEC was covered by a Markel Not-for-Profit Management Liability insurance policy (Policy No. ML824342-0) ("the policy) from October 30, 2017 to October 30, 2018. (Doc. 34-5 at 6). The policy's general terms and conditions section defined the term "claim" as follows: "with respect to each purchased Coverage Part those matters defined as a **Claim** in each such Coverage Part." (Doc. 34-5 at 12) (emphasis in original).

The policy included a "Directors and Officers and Organization Liability Coverage Part" or "D and O" coverage part. *Id*. at 27. Under that provision, Markel was obligated to defend ASSEC if a claim was made against it. (Doc. 34-5 at 28). In accordance with the D and O coverage part, a claim constituted, among other things:

> A written demand against an **Insured** for monetary damages or non-monetary relief, including a written demand that an **Insured** toll or waive a statute of limitations, commenced by such **Insured's** receipt of such written demand [and] [a] civil proceeding against an **Insured** commenced by the service of a complaint or similar pleading upon such **Insured**[.]

(Doc. 34-5 at 28) (emphasis in original). The policy also defined what types of actions would trigger Markel's duty to defend in such a claim. These events were defined as wrongful acts. Under the D and O coverage part, a wrongful act included "any actual or alleged error, misstatement, misleading statement, act, or omission, neglect or breach of duty[.]" (Doc. 34-5 at 30). Finally, the D and O coverage part excluded coverage "[f]or any actual or alleged liability of the **Organization** under any written or express contract or agreement, except to the extent that the **Organization** would have been liable in the absence of such contract or agreement." (Doc. 34-5 at 32) (emphasis in original).

## II.    ASSEC enters into a Cooperative Agreement with NASA

On May 24, 2016, ASSEC entered into a Cooperative Agreement ("CAN") with NASA to fund the children's television program, *Space Racers*. (Doc. 34-2 at 2).  The CAN stated that NASA would provide ASSEC with an incremental funding award for three years contingent on the availability of NASA funds. *Id.* The agreement provided the funding would take place as follows: the first year of funding would amount to $1,500,000.00; the second year of funding would amount to $1,500,000.00; and third year funding would amount to $1,500,000.00. (Doc 34-2 at 4). Eventually each funding installation was reduced to approximately $1.4 million. (Doc. 35 at 5).

Subsection B(a) of the CAN stated that *"[i]t is anticipated that these funds will be obligated as appropriated funds become available without any action required by the recipient.* The recipient will be given written notification by the NASA grant officer." (Doc. 34-2 at 4) (emphasis added). The immediately following subsection provided that "[t]he recipient agrees to perform work up to the point at which the total amount paid or payable by the Government approximates but does not exceed the total amount actually allotted to this award. NASA is not obligated to reimburse the recipient for the expenditure of amounts in excess of the total funds allotted by NASA to this grant or cooperative agreement." (Doc. 34-2 at 4). Absent from the CAN is any indication that ASSEC was required to request funding from NASA apart from submitting receipts for work completed by Space Race, LLC.

### III.  ASSEC enters into a Memorandum of Agreement with Space Race, LLC

On June 29, 2016, ASSEC and Space Race, LLC entered into a Memorandum of Agreement ("MOA") to memorialize their obligations to each other in accordance with the CAN. (Doc. 34-1 at 2). The MOA specified that ASSEC agreed to pay Space Race, LLC $4,314,812.00 in exchange for Space Race, LLC's production of *Space Racers* and other supplemental content. *Id.* ASSEC and Space Race, LLC also agreed to co-brand *Space Racers* and work on promotional materials together. (Doc. 34-1 at 2).

4

As to payments, ASSEC agreed, on the date of signing, to pay Space Race, LLC all the amounts Space Race, LLC had already spent for the production of *Space Racers* and other related funding incurred up to that date, and further provided that it would "make prompt payment to [Space Race, LLC] pursuant to its invoices . . . provided, however, that (i) [ASSEC's] payment obligations are expressly conditioned on its receipt of the related funding from NASA" and "(ii) to the extent that any invoiced amounts exceed the contemporaneously available NASA funding, [ASSEC] shall make prompt payment to [Space Race, LLC] upon receipt of the NASA funding." According to Section 4 of the MOA, Space Race, LLC was also required to provide any additional backup information or assistance to "aid [ASSEC] in connection with its reporting obligations in respect of the [CAN]." (Doc. 34-1 at 3). Absent from the MOA was any indication that ASSEC was required to request funding from NASA. The parties agreed to arbitrate any disputes arising from the MOA. (Doc. 34-1 at 4).

## IV.    NBC asks Space Race, LLC to produce episodes of *Space Racers* for its children's network

In 2016, NBC approached Space Race, LLC with an offer to broadcast *Space Racers* on its children's television network, Sprout. This deal resulted in an amendment to the MOA titled "Exhibit A." (Doc. 34-1 at 5). Exhibit A shortened Space Race, LLC's deadline to produce episodes of *Space Racers* from three years to 12–18 months. (Doc. 34-1 at 6). It recognized that, due to this amendment, the

funding schedule the parties originally contemplated – for an even distribution of funds across three years of production – would be altered such that "the bulk of funding" would be provided in fiscal year 2016–2017 to meet broadcasting production and distribution schedules. (Doc. 34-1 at 13). Exhibit A also provided that ASSEC would "request[] funding for contract labor for team members Michael Matays, Matthias Schmitt, and Charles Matays, as well as production and development costs of the episodic content and development of associated digital assets for distribution." (Doc. 34-1 at 13).

## V.    Space Race, LLC's allegations

For a time, ASSEC and Space Racer, LLC's arrangement flourished. But their relationship soured around November 2016. This souring resulted in Space Race, LLC filing a Demand for Arbitration against ASSEC on December 28, 2017 (Doc. 34-3 at 2) and a three-count Statement of Claim with the American Arbitration Association against ASSEC in January 2, 2018. (Doc. 34-4).

In its Demand, Space Race, LLC described the nature of its dispute with ASSEC as follows: "[c]laim for anticipatory breach of contract, or declaratory judgment in the alternative, to hold Respondents liable for efforts to stymie, blockade, or perhaps reallocate for [ASSEC's] benefit, $1.5 million in NASA funds earmarked for Claimant. Space Race will seek compensatory and lost profit damages." (Doc. 34-3 at 2). In a section titled "Other Relief Sought" on the Demand

form, Space Race, LLC indicated they sought attorney's fees, interest, arbitration costs, and punitive / exemplary damages. *Id.*

In its Statement of Claim, Space Racer, LLC asserted that ASSEC's former CEO, Dr. Deborah Barnhart, motivated by personal grievances, actively undermined the CAN and the MOA, resulting in NASA's refusal to fund *Space Racers*. (Doc. 34-3 at 2–4, 9–11, 19, 21). In its "Summary of the Action," preceding its "Facts" section, Space Race, LLC stated (as distilled by this Court):

(1) ASSEC stymied, blockaded or perhaps reallocated the CAN funds;[1]

(2) Dr. Barnhart and another ASSEC employee refused to request available NASA funds;[2]

(3) This was a straight forward breach of contract claim and that the issue [before the arbitral panel] is whether [ASSEC] can avoid payment to Space Race of a conditional funding obligation by creating a false pretext to prevent NASA, a willing funder, from funding;[3]

(4) Dr. Barnhart refused to do her part to fund *Space Racers* as part of a bureaucratic power grab;[4]

(5) Dr. Barnhart's ire led her to deny NASA funding to *Space Racers*; (Doc. 34-4 at 5);

(6) Dr. Barnhart blew-off Space Race, LLC executives' emails regarding funding;[5] and

---

[1] Doc. 34-4 at 2, paragraph 1.
[2] Doc. 34-4 at 2, 4, paragraphs 2, 9.
[3] Doc. 34-4 at 4–5, paragraph 10.
[4] Doc. 34-4 at 5, paragraph 11.
[5] Doc. 34-4 at 5–6, paragraphs 11–13.

(7) Dr. Barnhart helped "whitewash" a cover-up designed to prevent *Space Racer's* funding and that her efforts to prevent funding were based on her personal grievances;[6]

Space Race, LLC invoked the panel's jurisdiction by reference to the MOA. (Doc. 34-4 at 8).

The allegations contained in Space Race, LLC's "Facts" section included, in relevant part, the following:

(1) Space Race, LLC partnered with ASSEC to receive a NASA grant to fund *Space Racers*;[7]

(2) NASA approved that funding in the CAN agreement;[8]

(3) NASA and ASSEC agreed that funds from the CAN would be issued contingent upon their availability, and that those funds were to be used for *Space Racer's* benefit;[9]

(4) Space Race, LLC and ASSEC memorialized their obligations to each other in the MOA;[10]

(5) Facts outlining the motives for Dr. Barnhart's alleged actions which resulted in Space Race, LLC being denied funding;[11]

(6) Dr. Barnhart told Space Race, LLC executives to "count on the probability of a zero third year" of funding and that she would "be speaking" to a NASA official about that matter on June 12, 2017. From this, Space Racer, LLC deduced that it was "[Dr. Barnhart] – not NASA – [who] decided not to fund the third tranche of *Space Race's* NASA funding";[12]

---

[6] Doc. 34-4 at 6–7, paragraph 15.
[7] Doc. 34-4 at 9, paragraph 25.
[8] Doc. 34-4 at 9, paragraph 26.
[9] Doc. 34-4 at 10, paragraph 27.
[10] Doc. 34-4 at 10, paragraph 29.
[11] Doc. 34-4 at 12–14, paragraphs 34–42.
[12] Doc. 34-4 at 14, paragraph 44.

(7) Space Race, LLC's executives attempted to acquire the funding on their own. These efforts included speaking directly with NASA officials who said that "NASA would fund *Space Race* in 2018 as it had done . . . if Dr. Barnhart . . . simply requested it." However, ASSEC and Dr. Barnhart didn't speak with Space Racer, LLC about this arrangement – "stonewall[ing]" Space Racer, LLC executives;[13]

(8) Dr. Barnhart disengaged from communications with Space Race, LLC executives regarding funding until December 2017;[14]

(9) Dr. Barnhart recommenced communications with Space Race, LLC executives on December 11, 2017, stating that NASA hadn't officially made a funding decision on *Space Racers*. Space Race, LLC executives believed this was in direct contravention to what NASA told them;[15]

(10) Following a letter sent by counsel from Space Race, LLC to ASSEC, ASSEC claimed that Space Race, LLC had failed to follow through on its auditing obligations in the MOA;[16]

(11) On December 21, 2017, NASA informed Space Race, LLC that it would not fund *Space Racers* in 2018 and that its decision "was not influenced by any action on the part of the Alabama Space Science Exhibit Commission.";[17] and

(12) Dr. Barnhart or another employee directed or dictated a letter from NASA to Space Race, LLC which denied *Space Racers'* third year of funding and that Dr. Barnhart "bought" ASSEC time to pursue its auditing claims against Space Racer, LLC.[18]

Space Race, LLC's Statement of Claim contained three "causes of action." Its causes of action pertinent to this case were the first and third: one claim for breach

---

[13] Doc. 34-4 at 14 – 15, paragraphs 45–49.
[14] Doc. 34-4 at 15 – 16, paragraphs 50–51.
[15] Doc. 34-4 at 16, paragraph 52.
[16] Doc. 34-4 at 16 – 17, para. 53.
[17] Doc. 34-4 at 17, paragraph 56.
[18] Doc. 34-4 at 18, paragraph 56.

of contract and breach of the duty of good faith and fair dealing, the other for quantum meruit. (Doc. 34-4 at 19, 21). Those claims related specifically to the MOA. (*See* Doc. 34-4 at 19 – 20, paragraphs 61–68; Doc. 34-4 at 21–22, paragraphs 73–77).

In its breach of contract and breach of the duty of good faith and fair dealing claim, Space Race, LLC alleged that in contravention to their MOA, ASSEC "refus[ed] to perform its obligation to obtain available funds from NASA for *Space Race* [sic] constitut[ing] a repudiation of the parties' Agreement" and that "[s]uch an anticipatory breach gives rise to a cause of action for breach of the Agreement under Alabama law." (Doc. 34-4 at 20). In its quantum meruit claim, Space Race, LLC alleged that ASSEC "knowingly induced Space Race to render cobranding services for [ASSEC] while agreeing to reimburse Space Race for its submitted invoices" and that Space Race, LLC "justifiably relied on [ASSEC's] promises," and that ASSEC "benefitted from Space Race's cobranding services." (Doc. 34-4 at 21). Space Race, LLC also alleged that it justifiably anticipated that ASSEC would reimburse it for work done because funding was available from NASA. *Id*. at 22.

## VI.   Markel "disclaims coverage"

ASSEC's counsel immediately contacted Markel after receiving Space Race, LLC's arbitration demand and filed a claim for loss. (Doc. 34-7 at 3). On January 8, 2018, Markel responded to ASSEC's claim and informed it that Senior Claims

Examiner Ryan Hale was assigned to ASSEC's claim. (Doc. 34-8 at 3). On February 20, 2018, Hale sent ASSEC a letter disclaiming a duty to defend and indemnify ASSEC in the arbitration action Space Race, LLC initiated. (Doc. 34-9 at 3–4). As to Space Racer, LLC's breach of contract claim, Hale provided that, consistent with the arbitration demand,[19] Space Race, LLC's claim represented a "straightforward breach of contract" claim and "all liability alleged against the Insureds is for breach of the parties' Agreement. As such, no coverage is available for this matter in its entirety." (Doc. 34-9 at 11). On Space Race, LLC's quantum meruit claim, Hale stated that coverage and a duty to defend didn't exist. *Id*. Rather, Hale found that "[a]s the Demand seeks declaratory relief and an award in quantum meruit for services rendered, such relief does not constitute Loss and as such is not covered by the Policy." *Id*. And, as a final catch-all Hale stated that in accordance with Endorsement MML 1340 08 15, no coverage or duty to defend existed because Space Race, LLC's claims were based on "the rendering or failure to render professional services." *Id*.

---

[19] While Hale's letter states that Markel considered the arbitration demand and ASSEC's policy with Markel, the letter's contents clearly indicate that Space Race, LLC's arbitral Statement of Claim was also considered, as the letter's contents feature details included in the Statement of Claim which aren't included in Space Race, LLC's Demand. (*Compare* Doc. 34-3 at 2 *with* Doc. 34-9 at 4).

## VII.  Deposition Testimony

On November 27, 2020, the parties convened for the deposition of Markel's Rule 30(b)(6) representative, Mr. Shekar Adiga. (Doc. 34-6). During his deposition, Mr. Adiga disclosed that along with Ryan Hale, a temporary employee, Charles Messina, reviewed materials and drafted what eventually became Markel's disclaimer letter. (Doc. 34-6 at 17, 33, 53, 55–59; *see also* Doc. 34-32 at 30). When making their coverage determination, Mr. Adiga revealed, neither Messina nor Hale reviewed the CAN or the MOA. Instead, they limited their documentary analysis to Space Race, LLC's Statement of Claim and compared it against ASSEC's insurance policy. (Doc. 34-6 at 68).

Mr. Adiga also revealed that, while completing the first draft of the coverage letter, Mr. Messina initially worked off the wrong policy preamble, which contained policy language different from that contained in the exclusion found in ASSEC's policy. (Doc. 34-6 at 92, 94, 99, 101–102; *see also* Doc. 34-30 at 102). Mr. Adiga disclosed that the perambulatory language Messina originally relied upon was broader in scope than the language contained in ASSEC's policy with Markel. *Id.* at 102.  Despite initially using this incorrect language, no substantive changes were made after the correct language was employed in the disclaimer letter ASSEC received.

## VIII.  Space Race, LLC prevails at arbitration

Space Race, LLC eventually prevailed at arbitration. (Doc. 34-13). The opening page of the AAA panel's final award noted that "Space Race's claims arise out of [ASSEC's] alleged failure to pay the outstanding principal amount of $1,313,902 pursuant to the [Memorandum of Agreement]." (Doc. 34-13 at 2). That line notwithstanding, the panel found that ASSEC acted in contravention to the CAN and MOA.

As to the CAN, the panel found a November 2017 conference call "the single most critical communication" between the parties, wherein NASA officials informed Space Race, LLC and ASSEC staff that third-year funding would be provided to Space Race, LLC if ASSEC provided reports to NASA commensurate with its obligations under the CAN. (Doc. 34-13 at 10, 12). The panel reasoned that "[t]he only plausible explanation that remains for NASA's decision to terminate the CAN was [ASSEC's] failure to submit periodic reports to NASA, as required by the CAN[.]" (Doc. 34-13 at 12). The panel applied similar reasoning when it determined that ASSEC breached the MOA, and eventually found that:

> Taken as a whole, the evidence supports the conclusion that [Dr.] Barnhart did in fact jointly decide with NASA, or at a minimum recommend to Erickson, that third year funding to Space Race not be provided by NASA to pay for the work Space Race had already performed. In furtherance of that decision, [Dr.] Barnhart directed Harbour not to cure [ASSEC's] breaches of its CAN reporting obligations. She did not write a letter to Erickson requesting the third year funding at any time prior to NASA's termination of the CAN.

(Doc. 34-13 at 15). The panel concluded its opinion with the following: "[ASSEC] shall pay Space Race the principal amount $1,313,902.00, representing the remaining unpaid amount under the [Memorandum of Agreement]." (Doc. 34-13 at 17).

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears 'the stringent burden of establishing the absence of a genuine issue of material fact.'" *Kennedy v. Warrior Air, Inc.*, 2019 U.S. Dist. LEXIS 208109, at *3 (S.D. Fla. Dec. 2, 2019) (citing *Sauve v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008). A factual dispute must be both genuine and material to prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "A 'material' fact is one that 'might affect the outcome of the suit under the governing law.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting *Anderson, supra*). "To raise a 'genuine' dispute, the nonmoving party must point to enough evidence that 'a reasonable jury could return a verdict for [him]*.'" Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Furcron, supra*).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." *Ness v. Aetna Life Ins. Co.*, 257 F. Supp. 3d 1280, 1287 (M.D. Fla. 2017) (citing *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)). "The Court must consider each motion on its merits, resolving all reasonable inferences against the party whose motion is under consideration." *Id.* As explained by the Eleventh Circuit, "'[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.'" *Ness*, 257 F. Supp. 3d at 1287 (citing *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## DISCUSSION

ASSEC filed a three-count complaint against Markel in the Madison County Circuit Court on March 20, 2019, and that action was removed to this Court. (Doc. 1-1 at 3). ASSEC contends (1) Markel breached its duty to defend; (2) Markel breached its duty to indemnify; and (3) Markel acted in bad faith regarding both duties and its claim handling responsibilities. *Id.* at 8–10. ASSEC has moved for summary judgment on its breach of duty to defend and indemnify claims. (Doc. 33

at 1). Spacer Racer, LLC has cross-moved for summary judgment on each of
ASSEC's claims. The Court begins with the question of whether Markel had a duty
to defend.

### I.    Markel didn't owe ASSEC a duty to defend based on the Statement of Claim and the policy language.

Alabama law provides that an insurance company's duty to defend its insured
is determined by the policy language and the allegations contained in the complaint.
*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Hethcoat & Davis, Inc.*, 339 F. Supp. 3d
1248, 1256 (N.D. Ala. 2017) (quoting *Allstate Indemnity Co. v. Lewis*, 985 F. Supp.
1341, 1344 (M.D. Ala. 1997)); *see also Blackburn v. Fidelity and Deposit Co. of
Maryland*, 667 So. 2d 661, 668 (Ala. 1995) (collecting authorities). If an insurer is
uncertain about the existence of such a duty after comparing a claim to the policy
language, it's obligated to investigate the claim beyond the complaint's four corners.
*Blackburn v. Fid. & Dep. Co. of Md.*, 667 So. 2d 661, 670 (Ala. 1995). When
determining whether an insurer owed a duty to defend, the Court begins by
examining the words in the insured's complaint in light of the policy language. A
reviewing court "may look to facts which may be proved by admissible evidence"
when deciding whether a duty to defend exists. *Mid-Continent Cas Co. v. Advantage
Medical Electronics, LLC*, 196 So. 3d 238, 244 (Ala. 2015) (quoting *Pacific
Indemnity Co. v. Run-A-Ford Co.*, 161 So. 2d 789, 795 (Ala. 1964)).

## A. The assertions in Space Race, LLC's "Summary of the Action" weren't wrongful acts covered under the policy.

Before addressing the substance of the parties' contentions, the Court must discuss some of the remarks ASSEC relies upon to establish that Space Race, LLC pled wrongful acts triggering Markel's duty to defend. In its Brief, ASSEC maintains that several purported wrongful acts are featured in Space Race, LLC's "Summary of the Action" section of its Statement of Claim and that these acts triggered Markel's duty to defend. Those wrongful acts amounted to ASSEC's "stymi[ng], blockad[ing], or . . . reallocat[ing]" the CAN funding;[20] Dr. Barnhart's creation of a "false pretext" to prevent NASA from funding *Space Racers*;[21] Dr. Barnhart desiring to see *Space Racers* destroyed;[22] Dr. Barnhart engaging in a "bureaucratic power grab";[23] Dr. Barnhart engaging in a "behind the scenes cover up" to manipulate NASA personnel and to "whitewash" her personal transgressions;[24] and that, following a conversation between NASA personnel and Space Racer, LLC executives, ASSEC "aggressively pursued" an allegation that Space Racer, LLC had failed in its auditing obligations.[25] (Doc. 35 at 20).Two things prevent the Court from agreeing with ASSEC.

---

[20] Doc. 34-4 at 1, paragraph 1
[21] Doc. 34-3 at 4, paragraph 10
[22] Doc. 34-4 at 5, paragraph 13
[23] Doc. 34-4 at 5, paragraph 11
[24] Doc. 34-4 at 6 -7, paragraph 15.
[25] Doc. 34-4 at 17–18, paragraph 56.

First, the assertions contained in Space Race, LLC's "Summary of the Action" largely relate to the ways Dr. Barnhart and her subordinate, Mr. Scott Harbour, gummed up the works to prevent the pass-through of NASA funds from ASSEC to Space Race, LLC as required in the MOA. In other words, the acts above reveal that ASSEC breached its pass-through obligation to turn-over funds as they were made available by ensuring those funds would never be made available. And this related to ASSEC's obligations under the MOA to provide funding as it was made available to ASSEC. (Doc. 34-1 at 3). Again, to avoid confusion, ASSEC breached its pass-through obligation imposed by the MOA by stopping the funding at its source before it could be disbursed – heading it off at the first pass by purposefully fumbling the first hand-off. These allegations, too, also supply a motive for breach. But establishing a motive behind a breach is unnecessary.

Second, the Court isn't entirely convinced that the above statements were factual allegations that comprised the predicate for ASSEC's alleged wrongful acts. In large part, the "allegations" relied upon by ASSEC to form the wrongful acts (as well as Markel, in some part, regarding Space Race, LLC's characterization of its claim) rest on the "Summary of the Action" section in Space Race, LLC's Statement of Claim. That section exists apart from the "Facts" section featured two sections later in Space Race, LLC's Statement of Claim. Review of the Statement of Claim shows that Space Race, LLC "re-allege[d] each and every allegation," but its actual

count largely addresses the parties' obligations under the MOA (original and as modified by Exhibit A),[26] ASSEC's pass-through obligation as outlined in that agreement and Space Race, LLC's co-branding obligation,[27] and the fact that Space Race, LLC fulfilled its obligations while ASSEC failed to get funds from NASA which constituted "a repudiation of the parties' [MOA]."[28] While the Court hasn't found any direct authority for the proposition that statements in the introduction of a complaint can put an insurer on notice for a claim of a wrongful act triggering a duty to defend, courts have found no claim to exist where a plaintiff states various acts and violations of law in the introduction of her complaint but failed to flesh those assertions out in its body and into a fully formed count. *Bracewell v. Patrick*, 2011 WL 1431521, at *3 (M.D. Ala. Apr. 14, 2011) (finding plaintiff's "announcement" of certain violations of law in the introduction of her complaint insufficient to state a claim where a count for that conduct wasn't pled).

### B. Space Race, LLC alleged that ASSEC breached its pass-through obligation in the MOA.

Contrary to ASSEC's arguments, (Doc. 35 at 16), many of the allegations comprising Space Race, LLC's grievances about ASSEC's behavior didn't concern the CAN. They concerned the MOA. (*Compare* Doc. 34-4 at 9–10, 14[29] *with* Doc.

---

[26] Doc. 34-4 at 19, paragraph 61.
[27] Doc. 34-4 at 19, paragraphs 62–63.
[28] Doc. 34-4 at 20, paragraph 65.
[29] Paragraphs 24–29, 44–46.

34-4 at 10–12, 14–19[30]). And the MOA is precisely what Space Race, LLC alleged that ASSEC breached. *Id.* at 19.[31]  As ASSEC conceded in oral argument, such a breach is an excluded act under the policy.

ASSEC contends it's due summary judgment because Space Racer, LLC pled a covered "wrongful act" not excluded by the parties' breach of contract exclusion in its Statement of Claim with the AAA.[32] The Court is unpersuaded. The

---

[30] Paragraphs 29–32, 34, 45, 49, 51, 54, and 58.

[31] Review of Space Race, LLC's Statement of Claim shows that the "Agreement" it contends was breached was the MOA. In paragraph 26 of the Statement of Claim, Space Race, LLC specifically delineated the two agreements, referring to the MOA as "the Agreement" for the remainder of the Statement of Claim, and references language contained in the MOA when outlining its breach of contract claim. (*See, e.g.,* Doc. 34-4 at 10, 14, 16, 19). The body of Space Race, LLC's Statement of Claim reveals several factual allegations concerning the CAN and the MOA. But contrary to ASSEC's assertions, the "bulk of the allegations in the SOC referable to the CAN" didn't serve as the crux of a breach of contract claim based on the CAN. (Doc. 35 at 14). Rather, Space Race, LLC's breach of contract claim is based explicitly on the MOA As discussed infra, and the Court is not persuaded to follow ASSEC's position that it was owed a duty to defend because Space Race, LLC failed to allege a breach of the MOA.

[32] ASSEC argues it is entitled to summary judgment on its duty to defend claim – based on Space Race, LLC's breach of contract claim – because the policy's breach of contract exclusion only excluded claims *for* breach of contract. (Doc. 35 at 13–14). ASSEC contends that this "for" in the phrase "for breach of contract" in the policy exclusion limits the applicability of that exclusion more than other phrases like "based upon, arising from, or in consequence." *Id.* at 13. Considering this limitation, ASSEC contends, the only way Markel could have properly applied this exclusion would have been in actions between parties to a contract, and Space Race, LLC's AAA Statement of Claim related largely to the CAN between NASA and ASSEC. (Doc. 35 at 14). Considering Space Race, LLC's Statement of Claim largely related to ASSEC's alleged failures in satisfying its obligations in accordance with the CAN, ASSEC contends, Markel's decision to deny a duty to defend was erroneous. For the above propositions, ASSEC cites several out-of-district cases which, it argues, reveal that the phrase "based upon, arising from, or in consequence" receives a broader interpretation than "for" – the word in the relevant exclusion here. That proposition – that said phrase is afforded broad interpretation – is uncontroversial as far as it goes. And the Court doesn't necessarily disagree that the "for" in the breach of contract exclusion is more limiting. However, ASSEC's assertions concerning the nature of Space Race, LLC's allegations – that they

allegations, excluding the statements in the preceding section of this Order, concern five acts – three misleading statements and two instances of neglect– allegedly undertaken by Dr. Barnhart and Scott Harbour. They include: (1) Dr. Barnhart's purportedly misleading statement that Space Race, LLC should "count on the probability of a zero" for 2018 funding despite *Space Race's* stellar performance;[33] (2) Dr. Barnhart neglecting her communication responsibilities by "stonewalling" Space Race, LLC executives;[34] (3) Dr. Barnhart again neglecting her communication responsibilities by ignoring an email from Space Race, LLC executives regarding funding;[35] (4) Harbour's misleading statement that funding would be "closed-out" on a telephone call with Space Race, LLC executives on December 11, 2017, after NASA indicated that funding would be made available if requested by ASSEC;[36] and (5) Dr. Barnhart's misleading statement that Space Race, LLC executives "not get in a hurry" and to wait to see what NASA says "officially" regarding *Space Racers'* funding despite previous indications from NASA that funding would be available.[37]

---

largely rest on a breach of the CAN and that Markel's coverage disclaimer is therefore at odds with the policy language – is unpersuasive.

[33] Doc. 34-4 at 14, paragraph 22
[34] Doc. 34-4 at 14, paragraph 23
[35] Doc.34-4 at 15, paragraph 49.
[36] Doc. 34-4 at 16, paragraph 51.
[37] Doc. 34-4 at 16, paragraph 52.

The Court finds Dr. Barnhart's statement that Space Race, LLC should "count on a probability of zero" constituted an anticipatory repudiation of the MOA. In Alabama, "[a] repudiation is a manifestation by one party to the other that the first cannot or will not perform at least some of his obligations under the contract." *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 938 (Ala. 2001) (*citing* E. Allan Farnsworth, *Contracts*, § 8.21, at 633-34 (1982)). Repudiation is proven "where words or acts evince '*an intention to refuse performance* within the future time allowed by the contract.'" *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d 177, 182 (Ala. 2001) (emphasis in original) (quoting *Shirley v. Lin*, 548 So. 2d 1329, 1334 (Ala. 1989)). A repudiation "must amount to an unqualified refusal or declaration of inability to substantially perform the duties outlined in the contract." *Id.* (citing *Box v. Metropolitan Life Ins. Co.*, 168 So. 220, 222 (Ala. 1936). Importantly, anticipatory repudiation is a breach of contract, not a tort. Restatement (Second) of Contracts § 253 (Am. L. Inst. 1981).

As explained above, ASSEC had an obligation under the contract to turn over funds as they became available. However, before ASSEC was due to turn over the funds to Space Race, LLC, Dr. Barnhart informed Space Race, LLC, that they should "count on the probability of a zero" for 2018 funding. That is, Dr. Barnhart manifested to Space Race, LLC that ASSEC would not perform its contractual obligations under the MOA. In so doing, ASSEC anticipatorily breached the

agreement with Space Race, LLC. Accordingly, the "wrongful acts" relied upon by ASSEC here amount to a breach of contract by anticipatory repudiation, so the actions are excluded acts under the policy.

### C. Space Race, LLC's quantum meruit claim didn't trigger a duty to defend.

Under Alabama law, "when an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (quoting *Brannan & Guy, P.C. v. City of Montgomery*, 828 So.2d 914, 921 (Ala. 2002)). And "courts routinely dismiss claims for quantum meruit recovery based upon unjust enrichment when an express contract indisputably exists vis-à-vis the same subject matter." *Old Town II, LLC v. Oppidan Holdings, LLC*, 2021 WL 2586813, at *16 (N.D. Ala. Mar. 8, 2021) (collecting authorities); *see also id.* (quoting *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016): "[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law."). However, "a plaintiff may sustain a claim for quantum meruit recovery based upon unjust enrichment when the existence of an express contract on the same subject matter remains inconclusive." *Old Town II, LLC*, 2021 WL 2586813, at *17 (N.D. Ala. Mar. 8, 2021) (collecting authorities). That inconclusiveness is absent here. Space Race, LLC's Statement of Claim clearly to matters expressly contemplated in

its MOA with ASSEC. (*Compare* Doc. 34-1 at 2–3 *with* Doc. 34-4 at 21–22). For this reason, ASSEC's claims as to Space Race, LLC's quantum meruit theory fail.

### D. ASSEC's claims for indemnification and bad faith fail.

Considering the above, the Court also concludes that Markel didn't owe ASSEC a duty of indemnification. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Ret. Sys. of Alabama*, 104 F. Supp. 3d 1313, 1316 (N.D. Ala. 2015) (no duty to indemnify where the court finds no duty to defend). Nor does the Court find any bad faith. *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 810 n. 4 (11th Cir. 2013) ("There was no breach of contract and, therefore, no bad faith in refusing to perform it.")

## CONCLUSION

Because Markel properly invoked the breach of contract exclusion contained in the parties' policy, Defendants' Motions for Summary Judgment is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**The Clerk of Court is DIRECTED to close** the case

**DONE** and **ORDERED** August 30, 2021.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE